MARY ENGEL v. SCOTT & HOLSTON LUMBER COMPANY (GUSTAVUS HERMAN and Others, Intervenors).[1]

January 17, 1895.

No. 9048.

**Parol Evidence—Ambiguity in Writing.**

When the language of a written contract is so equivocal or ambiguous as to be open to either of two interpretations, parol evidence of the subsequent conduct of the parties, showing the construction put upon it by them, is admissible.

**Sale of Logs—Delivery—Question for Jury.**

*Held,* that under the evidence in this case the question of whether the conduct of the parties was that delivery of the logs so as to pass title was to be made on the St. Louis river, within one-half mile of Fond du Lac station, or at the mill of the vendees at New Duluth, and, if the former, whether such delivery had been in fact made, should have been submitted to the jury.

**Bailee with Special Interest—Recovery.**

A mere naked bailee cannot recover against a third person for the conversion of the bailed property when the bailor or owner has intervened and asserted his rights to the property. But a bailee entitled to the possession of the goods for a specific time and purpose may, notwithstanding such intervention on the part of the general owner, recover to the extent of the value of his special interest in the property.

Appeal by plaintiff from a judgment of the district court for St. Louis county. At the trial the court, Ensign, J., instructed the jury to return a verdict for the defendant. The facts are stated in the opinion. Reversed.

*Scott Rex* and *Taylor & Stephenson,* for appellant.

*Jaques & Hudson,* for respondent.

*R. R. Briggs,* for intervenors.

BUCK, J.   Mary Engel, the plaintiff, brought this action as assignee of her brother, Frederick Engel, against the defendant, Scott & Holston Lumber Company, to recover the value of 2,300 saw logs and 32 pieces of piling, which in her complaint she alleges such

[1] Reported in 61 N. W. 825.

defendant had unlawfully converted and disposed of to its own use, except about 150 of such logs, and claiming damages therefor in the sum of $1,720.19. The other respondents, Herman, Becklinger & Herman, appeared in the action as intervenors, and set forth in their complaint a contract between Frederick Engel and themselves, dated February 13, 1891, wherein Engel agreed to sell and deliver on the St. Louis river, within one-half mile of Fond du Lac station, three to four, more or less, hundred thousand feet pine logs, 75 pieces 24 feet long, 100 pieces 22 feet long, and 100 pieces 18 feet long. Such contract also contained this clause: • "And further agrees to deliver said logs to the mill owned by the parties of the first part, located at New Duluth; and said logs shall be delivered at such time and quantity as the party of the first part shall direct. All said logs shall be delivered on the ice by April 1st, 1891. Said logs shall be scaled by a scaler agreed upon by both parties and also paid by both parties." The contract also contained a clause that payments should be made as follows: Four dollars per M., payable weekly as the logs are delivered on the ice; one dollar per M. when all are delivered on the ice; one dollar per M. when delivered to mill; and balance July 15. The intervenors also allege that when Engle had put the logs into the booms in the St. Louis they paid him $703.89 on account of the purchase price of said logs, but that before the delivery of the logs by Engel to the intervenors' mills the boom containing said logs broke, and said logs intermingled with the logs of the defendant lumber company, and they claim a lien upon said logs for the amount which they had paid Engel on account of the purchase price. The lumber company put in a general denial to the plaintiff's complaint. Upon the trial the lumber company attempted to establish a defense by showing that it purchased the logs of the intervenors. Plaintiff claimed that a large number of the logs were never scaled for the reason that they were covered with snow and ice and in the water; and also that Frederick Engel became dissatisfied with the manner of scaling the logs, and that he stopped the scaler from scaling. Frederick Engel also testified that the intervenors refused to advance money in accordance with the terms of the contract, and that, after the boom broke, one of the intervenors told him that he had nothing to do with the logs. There does not appear to have been much controversy over the terms of the contract, except as to who should furnish

the boom chains. Frederick Engel testified that the intervenors were to furnish the boom chains by the terms of the agreement. This testimony was given without objection. The written contract provided that Engel should furnish all necessary boom sticks, and he also testified that he never delivered the logs to Herman, Becklinger & Herman, the intervenors. The written contract is not very clear or satisfactory as to what was to be done to constitute a legal delivery of the logs, but whether it was sufficiently plain for a court to say, as a matter of law, just where the logs were to be delivered is unnecessary for us to determine, for there was a sharp conflict in the evidence as to whether enough had been done under the terms of the contract to constitute a legal delivery, so as to pass the title from Frederick Engel to the intervenors. If a considerable portion of the logs were not scaled according to the agreement, and if the intervenors did not furnish the boom sticks nor pay the four dollars per thousand as they agreed to do when the logs were placed upon the ice, then Frederick Engel might well claim that the title had not passed, as he still retained possession of the logs and the intervenors had not assumed control over them. As we understand the evidence, when the boom broke the logs scaled and those not scaled mingled together with the logs of other parties, and were by a third party taken to the defendant's mill, and by it sawed up and appropriated to its own use; and that the intervenors never assumed to have control or possession until they were at the mill of defendant, when they received payment for them to the amount of $105. Under this state of facts we do not see why the case should not have been submitted to the jury under proper instructions from the court. Certainly the evidence as to what had been done by both Engel and the intervenors as to furnishing boom chains, scaling the logs, payment, and delivery of the logs, all had a direct bearing upon the question of where the title of the logs rested, and upon this very question depended the success or defeat of the plaintiff in the action. The court therefore erred in instructing the jury to find a verdict for the defendant. With these views of the case, we do not deem it necessary to pass upon or determine the rights of the intervenors, as those rights can be determined upon a new trial of the action, they not having taken an appeal in this case. However, we may state that a mere naked bailee cannot recover against a third person for the conversion of the bailed property,

where the bailor or owner has intervened and asserted and proven his right. But in this case, even if there was a delivery of the logs upon the ice sufficient to pass the title from Engel to the intervenors, yet Engel was entitled to the possession of the logs for the purpose of carrying out his contract and delivering them to the mill of the intervenors, and to insist upon the intervenors performing their part of the contract. Engel thus having the right of possession for a specific time and purpose, had the right to recover to the extent of the value of his special interest in the property, notwithstanding the intervention on the part of the general owners.

The judgment is reversed.